CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUN 2 9 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALL BUSINESS SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:09CV00013 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| NATIONSLINE, INC., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

All Business Solutions, Inc. ("ABS") filed this diversity action against NationsLine, Inc. ("NationsLine") on January 14, 2009. In its second amended complaint, ABS asserts claims for breach of contract, business conspiracy, and misappropriation of trade secrets. The case is presently before the court on a motion filed by NationsLine, in which it argues that ABS's claims for business conspiracy and misappropriation of trade secrets should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that the court should abstain from adjudicating any remaining claims pending the resolution of related state court proceedings in New Jersey. For the following reasons, NationsLine's motion to dismiss will be granted in part and denied in part, and its motion to abstain will be denied.

### Factual and Procedural Background

ABS is a New Jersey corporation that provides telecommunications services. NationsLine is, on information and belief, a Virginia telecommunications corporation.

On November 4, 2005, ABS entered into a direct agent sales agreement with NationsLine (the "contract"), by which ABS agreed to market and sell telecommunications products and services manufactured or designated by NationsLine. The contract provided that ABS would receive a commission for the products and services that it sold on behalf of NationsLine.

In its second amended complaint, ABS explains that some of the principal products or services that ABS sold for NationsLine were direct inbound dialing numbers ("DIDs"). ABS sold the DIDs to various entities, including a company by the name of Prestige Business Solutions, Inc. ("PBS"). PBS then used, sold, assigned or transferred the DIDs to USA Locksmith. The DIDs enabled USA Locksmith, or other companies with similar business models, to offer a nationwide service for locksmiths.

> For example, a potential customer for locksmith services can dial a DID in Roanoke, Virginia, and be connected to an operator at a central location in some other state. The central call center for USA Locksmith will then get in touch with its locally-designated affiliated locksmith, and send that person to the site or person needing locksmith services.

(2d Am. Compl. at para. 9).

ABS alleges that NationsLine earned large fees from the use of its DIDs by USA Locksmith and other customers acquired for NationsLine by ABS. ABS further alleges that it became legally entitled to commissions from NationsLine as a result of promoting and selling NationsLine's services.

In October of 2007, a second locksmith company, A Certified Locksmith ("A Certified"), entered into a contract with NationsLine. According to the second amended complaint, "A Certified was a competitor to PBS in the locksmith business, though both had the same DID supplier – NationsLine – and both dealt with the same telecommunications consultant and NationsLine agent – ABS." (2d Am. Compl. at para. 11). ABS alleges that PBS, upon learning of the competition posed by A Certified, became determined to destroy the competition. Additionally, ABS alleges that "[w]hen PBS learned that certain employees of ABS held interests

2

in A Certified, PBS became determined to injure or destroy ABS as well." (2d Am. Compl. at para. 11).

By letter dated December 9, 2008, NationsLine "suddenly, unexpectedly, and without legal basis, terminated its contract with ABS." (2d Am. Compl. at para. 11). ABS alleges that NationsLine's letter falsely accused ABS of diverting DID numbers to A Certified that had been ordered by PBS for USA Locksmith, and that the letter "noted many instances of communication between PBS and NationsLine in the course of making several groundless accusations of misconduct by ABS." (2d Am. Compl. at para. 13). For instance, the letter advised ABS that NationsLine and PBS were considering taking legal action against ABS, but that both companies would forego their causes of action if ABS would agree to waive its right to commissions from NationsLine sales to PBS.

Based on the letter's references to NationsLine's communications with PBS, as well as "other communications . . . with NationsLine and PBS," ABS alleges that "NationsLine and PBS were and are actively working in concert with the shared goal of terminating the payment of ABS commissions, while continuing to engage in the DID sales arranged by ABS and expressly contemplated in the ABS-NationsLine contract." (2d Am. Compl. at para. 14). ABS further alleges that NationsLine has failed to pay it commissions due and owing under the contract, which total at least $90,000.

ABS filed the instant action against NationsLine on January 14, 2009. In its first amended complaint,[1] ABS asserted claims under Virginia law for breach of contract, business conspiracy, misappropriation of trade secrets, and tortious interference with contractual relations.

---

[1] The complaint was first amended to reflect the proper name of the defendant.

3

On February 11, 2009, NationsLine moved to dismiss certain claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. The court held a hearing on the motion on March 19, 2009, and by order entered that same date, the court took the motion under advisement and directed ABS to file a second amended complaint within ten days.

ABS filed its second amended complaint on March 30, 2009. The second amended complaint sets forth the following counts: Count I (breach of contract); Count II (statutory business conspiracy and misappropriation of trade secrets); Count III (declaratory judgment); and Count IV (equitable relief: accounting, specific performance, and injunction).

On April 9, 2009, NationsLine filed the instant motion. The motion is now fully briefed and ripe for review.[2]

## Discussion

### I. Motion to Dismiss under Rule 12(b)(6)

NationsLine has moved to dismiss Count II of ABS's second amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. In Count II, ABS first asserts a business conspiracy claim under the Virginia Business Conspiracy Act, Va. Code § 18.2-499 et seq. ABS also asserts a claim for misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336, et seq. In moving to dismiss Count II, NationsLine argues that the allegations in the second amended complaint are insufficient to state a claim under either

---

[2] Neither side requested a hearing on the instant motion.

4

Act. Alternatively, NationsLine argues that the claims are barred by the limitation of liability provision in the parties' contract. The court will address each of these arguments in turn.

### A. The Sufficiency of the Plaintiff's Allegations

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

#### 1. Statutory Business Conspiracy

Under Virginia Code § 18.2-500, "[a]ny person who [is] injured in his reputation, trade, business, or profession by reason of a violation of § 18.2-499" may seek relief in a civil court. Va. Code § 18.2-500(A). The relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . ." Va. Code § 18.2-499(A). To ultimately prevail under this statute, "a plaintiff must prove by clear and convincing evidence the following

5

elements: (1) concerted action; (2) legal malice; and causally related injury." Schlegel v. Bank of America, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007).

Upon review of the second amended complaint, the court is constrained to conclude that ABS's allegations of a business conspiracy are sufficient to withstand NationsLine's motion to dismiss. To support its business conspiracy claim, ABS restates all of the allegations in the preceding 21 paragraphs of the second amended complaint, and alleges that NationsLine and PBS acted together "to divert ABS's earned commissions," and "to injure or destroy ABS's business . . . ." (2d Am. Compl. at para. 23). ABS further alleges that the conspiratorial conduct was "intentional, purposeful, willful and malicious," and that it "resulted in substantial money damages to ABS." (2d Am. Compl. at para. 23). While these particular allegations are arguably conclusory, the court is of the opinion that the second amended complaint, in its entirety, contains sufficient factual content to permit the court to reasonably infer that the required elements of concerted action, legal malice, and causally related injury can be met. Accordingly, NationsLine's motion to dismiss will be denied to the extent that it challenges the sufficiency of the allegations asserted with respect to the business conspiracy claim.[3]

---

[3] In challenging the legal sufficiency of the business conspiracy claim, NationsLine contends, in a cursory fashion, that the conspiracy claim is "duplicative" of the breach of contract claim asserted in Count I. (Def.'s Br. in Support of its Renewed Motion to Dismiss at 6). To the extent NationsLine seeks dismissal of the business conspiracy claim on this basis, the argument is without merit. See, e.g., Pre-Fab Steel Erectors, Inc. v. Stephens, 2009 U.S. Dist. LEXIS 26548, at *53 (W.D. Va. Apr. 1, 2009) (holding that a business conspiracy claim could be pled in conjunction with a breach of contract claim, since "[t]he business conspiracy claim . . . arises from a common law duty separate and independent from any contractual duties arising from the oral employment contract"); see also CaterCorp, Inc. v. Catering Concepts, Inc., 431 S.E.2d 277, 282 (Va. 1993) (holding that the plaintiff alleged sufficient facts to state claims for breach of contract and business conspiracy).

6

Case 7:09-cv-00013-GEC-mfu   Document 27   Filed 06/29/09   Page 6 of 15   Pageid#: 244

## 2. Misappropriation of Trade Secrets

To state a claim under the Virginia Uniform Trade Secrets Act ("VUTSA"), a plaintiff must allege sufficient facts to establish "(1) that the information at issue is a trade secret and (2) that the defendant misappropriated it." S&S Computers & Design, Inc. v. Paycom Billing Services, Inc., 2001 U.S. Dist. LEXIS 25874, at *4 (W.D. Va. Apr. 9, 2001). The Act defines a "trade secret" as:

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336. Additionally, "misappropriation" is defined as:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;[4] or
>
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>
>    a. Used improper means to acquire knowledge of the trade secret; or
>
>    b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

---

[4] "Improper means" include "theft, bribery misrepresentation, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Va. Code § 59.1-336.

7

(1) Derived from or through a person who had utilized improper means to acquire it;

(2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(4) Acquired by accident or mistake.

Id.

Having thoroughly reviewed the second amended complaint, the court agrees with NationsLine that the complaint does not contain sufficient allegations to state a claim for misappropriation of trade secrets. ABS's claim under the VUTSA is premised on the single, conclusory assertion that NationsLine "sought . . . to appropriate and disclose the names of ABS customers, along with other ABS trade secrets and confidential information." (2d Am. Compl. at para. 23). The second amended complaint contains no additional factual allegations that support this assertion or otherwise "plausibly suggest an entitlement to relief" under the VUTSA. Iqbal, 129 S. Ct. at 1951. Because Twombly and Iqbal make clear that "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to withstand a motion to dismiss, the court will grant NationsLine's motion with respect to this claim. See Id. at 1949 (citing Twombly, 550 U.S. at 557).

### B. The Limitation of Liability Provision

Having concluded that ABS's second amended complaint contains sufficient facts to state a business conspiracy claim against NationsLine, the court must consider NationsLine's

8

alternative argument that the claim is barred by the limitation of liability provision in the parties' contract. That provision, contained in paragraph 13 of the contract, states as follows:

> Limitation of Liability: **In no event shall NATIONSLINE be liable for special, indirect, incidental, punitive or consequently damages, including loss of profits, arising through the relationship or the conduct of business contemplated herein. The sole liability of NATIONSLINE to All Business Solutions is for commissions actually earned and due under the contract, subject to NATIONSLINE's rights of set-off.** NATIONSLINE makes no warranty, either expressed or implied, as to the merchantability, fitness for any purpose, continued availability or completeness of any product or service, all of which are excluded and are waived by All Business Solutions. No contrary representation or warranty shall be made or given by All Business Solutions to any customer. To the fullest extent allowed by law, each party waives the right to a trial by jury.

(2d Am. Compl., Ex. A) (emphasis added).

Relying on the highlighted portion of the provision, NationsLine argues that the clause "limits not only the types of damages available, but also the theories of liability which may be advanced against Nationsline in any . . . action related to the conduct of business under the contract," and thus, that the statutory business conspiracy claim should be dismissed. (NationsLine's Br. in Support of its Renewed Mot. to Dismiss at 5).[5] In response, ABS argues that "[s]tatutory and common law duties may exist independently of agreed-upon contractual duties," and that the limitation of liability provision should not be construed to preclude an independent tort claim. (ABS's Br. in Opp. to the Mot. at 4).

Under Virginia law, which the parties agree controls the resolution of this issue, parties may limit their risk of loss through contract. Kocinec v. Public Storage, Inc., 489 F. Supp. 2d

---

[5] The court will hereinafter refer to NationsLine's brief in support of its renewed motion to dismiss as "NationsLine's Br."

9

555, 558 (E.D. Va. 2007) (citing Virginia cases and cases applying Virginia law); see also Trumball Investments, Ltd. v. Wachovia Bank, N.A., 2005 U.S. Dist. LEXIS 7195, at *10 (E.D. Va. Apr. 15, 2005) ("Virginia courts regularly enforce exculpatory agreements."). In order for a limitation of liability provision to be enforceable, however, it must not contravene public policy. Kocinec, 489 F. Supp. 2d at 559. In this case, the court concludes that, even if the contract's limitation of liability provision was intended to bar future "claims for anything other than the payment of commissions due" (NationsLine's Br. at 5), the provision cannot, as a matter of public policy, exempt NationsLine from liability for intentional, conspiratorial misconduct.

While the court has been unable to locate any Virginia Supreme Court precedent directly on point, an examination of leading authorities in the area of contracts and of cases in other jurisdictions reveals that courts generally refuse to enforce provisions that purport to limit a party's liability for future intentional misconduct. For instance, the Restatement (Second) of Contracts expressly provides that "[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." Restatement (Second) of Contracts § 195(1) (1981). Likewise, both Corbin on Contracts and Williston on Contracts specifically recognize that contractual provisions that attempt to exempt a party from liability for intentional misconduct are generally considered void. See Corbin on Contracts § 85.18 (2009) ("Courts do not enforce agreements to exempt parties from tort liability if the liability results from that party's own . . . intentional conduct."); 8 Williston on Contracts § 19:23 (4th Ed.) ("An attempted exemption from liability for a future intentional tort or crime or for a future willful . . . act is generally held void."). As the District of Columbia Court of Appeals recently noted, "[t]hese treatises are based upon the case law from a wide range of jurisdictions, and in turn,

10

many courts have adopted the reasoning of these treatises." Carleton v. Winter, 901 A.2d 174, 181 (D.C. 2006); see, e.g., Jardin v. Datallegro, Inc., 2009 U.S. Dist. LEXIS 3339, at * 16 (S.D. Cal. Jan. 20, 2009) (citing to § 195(1) of the Restatement (Second) of Contracts and holding that the parties' contract could not exempt the defendants from liability for future intentional acts); Ostrowiecki v. Aggressor Fleet, Ltd., 2008 U.S. Dist. LEXIS 62713, at *43 (E.D. La. Aug. 15, 2008) (same); Wright v. Sony Pictures Entertainment, Inc., 394 F. Supp. 2d 27, 33 (D. D.C. 2005) (same); LDCircuit, LLC v. Sprint Communications Co., L.P., 364 F. Supp. 2d 1246, 1264 n.5 (D. Kan. 2005) (same); RepublicBank Dallas, N.A. v. First Wisconsin National Bank of Milwaukee, 636 F. Supp. 1470, 1473 (E.D. Wis. 1986) (same); Rhino Fund, LLLP v. Hutchins, 2008 Colo. App. LEXIS 1078, at *17-18 (Colo. Ct. App. June 26, 2008) (same); Hojnowski v. Vans Skate Park, 901 A.2d 381, 386 (N.J. 2006) (same).

In light of this trend in case law from other jurisdictions, as well as the clear provisions of the Restatement and other treatises, the court is of the opinion that the Virginia Supreme Court would not enforce an agreement that purports to exempt a party from liability resulting from that party's future intentional misconduct. See St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins., 365 F.3d 263, 272 (4th Cir. 2004) (a federal court may consider the practices of other states, along with the teachings of treatises, in predicting how a state court would rule on a particular issue). Accordingly, the court concludes that ABS's business conspiracy claim is not barred by the limitation of liability provision contained in the parties' contract, and the court will deny NationsLine's motion to dismiss with respect to this claim.

## II. Motion to Abstain

In addition to moving to dismiss the statutory claims asserted in the second amended complaint, NationsLine has filed a motion to abstain, pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), on the basis that related proceedings are now pending in New Jersey state court, namely a civil action filed against ABS in the Superior Court for Bergen County by PBS.[6] For the following reasons, the motion to abstain will be denied.

As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457, 462 (4th Cir. 2005). Indeed, the United States Supreme Court has emphasized that federal courts have a "virtually unflagging obligation to exercise jurisdiction given to them," Colorado River, 424 U.S. at 817, and "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not,'" Chase Brexton, 411 F.3d at 462 (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821)).

Nonetheless, in Colorado River, the Supreme Court recognized an "extraordinary and narrow exception" to the rule favoring the exercise of jurisdiction. Colorado River, 424 U.S. at 813. "Quite apart from the important policies underlying the traditional grounds for abstention, Colorado River, solely as a matter of judicial administration, permits dismissal of a duplicative federal action when 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." Chase Brexton, 411 F.3d at 463 (quoting Colorado River, 424 U.S. at 817). Because abstention under Colorado

---

[6] In the state action, PBS asserts a variety of claims against ABS, including claims for breach of contract, tortious interference with contract, conversion, fraud, unjust enrichment, and conspiracy.

12

River is not based on "weightier concerns of proper constitutional adjudication and federal-state relations," it must be "applied parsimoniously." Id. The United States Court of Appeals for the Fourth Circuit has admonished that district courts "must remain mindful that this form of abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." Id.

In deciding whether Colorado River abstention is appropriate, the court must first determine whether there are parallel proceedings in both state and federal court. Id. Even if there are parallel proceedings, however, the court must balance several additional factors to determine whether exceptional circumstances exist to justify the surrender of jurisdiction. Those factors are as follows:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Chase Brexton, 411 F.3d at 463-464. In balancing these factors, the balance is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 15 (1983) (emphasis added). In the end, abstention may be considered only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Id.

Applying these principles, the court is unable to conclude that this action presents the "exceptional circumstances" necessary for the court to abstain from exercising jurisdiction under

13

Colorado River. First, there are sufficient disparities between the actions pending before this court and the Superior Court for Bergen County to conclude that they are not parallel proceedings. "Suits are considered parallel 'if substantially the same parties litigate substantially the same issues in different forums.'" Al-Abood v. El-Shamari, 217 F.3d 225, 232 (4th Cir. 2000) (quoting New Beckley Mining Corp. v. International Union, 946 F.2d 1072, 1073 (4th Cir. 1991)). Whereas the instant action is one "for damages sustained, and continuing to be sustained, by ABS as a result of a breach of contract and a business conspiracy by NationsLine" (2d Am. Compl. at para. 1), NationsLine is not a party to the New Jersey state action.

Nonetheless, even assuming that parallel proceedings do exist, an analysis of the six factors identified in Chase Brexton reveals that abstention under Colorado River is inappropriate. Since there is no real property at issue in this case, the first factor -- whether the subject matter of the litigation involves property over which the first court may assume in rem jurisdiction to the exclusion of others -- is inapplicable. Likewise, consideration of the second factor -- whether the federal forum is inconvenient -- does not provide any support for abstention in this case. Additionally, the fourth and sixth factors -- the order in which the federal and state courts obtained jurisdiction and whether the state proceedings are adequate to protect the parties' rights -- do not counsel in favor of abstention. The instant action against NationsLine was filed more than two months before the state action was filed by PBS. Moreover, as previously stated, NationsLine, the defendant in this action, is not even a party to the state action. Thus, the court is unable to conclude that the state action would be an adequate vehicle for the complete resolution of all of the issues between the parties.

14

The thrust of NationsLine's motion is that the third factor -- the desirability of avoiding piecemeal litigation -- weighs in favor of abstention. NationsLine emphasizes that "[t]he simultaneous prosecution of both cases will result in the litigation of many of the same issues twice, with the potential for inconsistent results." (NationsLine's Br. at 11). However, "[t]he threat of piecemeal litigation in the sense that two cases proceed simultaneously . . . is not sufficient to support a decision to abstain under Colorado River." Chase Brexton, 411 F.3d at 465-466. Likewise, "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colorado River, 424 U.S. at 817.

For these reasons, the court concludes that NationsLine has not overcome the "heavily weighted" balance in favor of retaining jurisdiction. Moses H. Cone, 460 U.S. at 15. Accordingly, its motion to abstain under Colorado River will be denied.

### Conclusion

For the reasons stated, NationsLine's motion to dismiss will be granted in part and denied in part, and its motion to abstain will be denied. The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 29th day of June, 2009.

_____
United States District Judge